**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MONTANA**

**BILLINGS DIVISION**

| | |
|---|---|
| **MARGARET A. LAKEL,**<br><br>                    **Plaintiff,**<br><br>       **vs.**<br><br>**MICHAEL J. ASTRUE, Commissioner of Social Security,**[1]<br><br>                    **Defendant.** | **CV 06-72-BLG-CSO**<br><br>**ORDER GRANTING**<br>**PLAINTIFF'S MOTION FOR**<br>**SUMMARY JUDGMENT, DENYING**<br>**DEFENDANT'S MOTION FOR**<br>**SUMMARY JUDGMENT, AND**<br>**REMANDING FOR AWARD OF**<br>**BENEFITS** |

Plaintiff Margaret A. Lakel ("Lakel") initiated this action to obtain judicial review of the decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB"), Disabled Widow's Benefits ("DWB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-1383(c), respectively.

On January 22, 2007, upon the parties' written consent, this

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Under Rule 25(d)(1), Fed. R. Civ. P., Michael J. Astrue is substituted as Defendant in this case, and the caption is now amended to reflect this change.

-1-

case was assigned to the undersigned for all purposes (Court's Doc. No. 23).  Now pending before the Court are the parties' cross-motions for summary judgment (Court's Doc. No. 12 (Lakel's motion) and Court's Doc. No. 16 (Commissioner's motion)).  Having considered the issues presented by the parties, together with the administrative record, the Court hereby grants Lakel's motion, denies the Commissioner's motion, and remands the matter for an award of benefits.

## I.   *PROCEDURAL BACKGROUND*

Lakel filed her DIB and DWB applications on December 18, 2003.  *Tr. at 52-54; 302-03*.  She filed her application for SSI on December 23, 2003.  *Tr. at 14*.  She alleges that she has been unable to work since November 24, 2003, because of neck problems that affect her shoulders and hands, depression, and anxiety. *Tr. at 82*.

The Social Security Administration ("SSA") denied Lakel's applications initially and on reconsideration.  *Tr. at 34-38; 41-42; 300-01; 305-14*.  An Administrative Law Judge ("ALJ") held an administrative hearing on March 30, 2005, at which Lakel appeared with counsel.  *Tr. at 326-87*.  The ALJ issued a written decision dated June 27, 2005, in which he found that Lakel was not disabled within the meaning of the Act.  *Tr. at 14-24*.  The Appeals Council denied Lakel's request for review *(Tr. at 7-9)*, making the determination the Commissioner's final decision for

purposes of judicial review.  20 C.F.R. §§ 404.981, 416.1481

(2006).  Jurisdiction vests with this Court pursuant to 42 U.S.C.

§ 405(g).

## II.  *STANDARD OF REVIEW*

This Court's review is limited.  The Court may set aside the

Commissioner's decision only where the decision is not supported

by substantial evidence or where the decision is based on legal

error.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.

2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971); Andrews v.

Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  Substantial

evidence also has been described as "more than a mere scintilla"

but "less than a preponderance."  Sandegathe v. Chater, 108 F.3d

978, 980 (9th Cir. 1997).  The District Court must consider the

record as a whole, weighing both the evidence that supports and

detracts from the Commissioner's conclusion.  Green v. Heckler,

803 F.2d 528, 530 (9th Cir. 1986) (citing Jones v. Heckler, 760

F.2d 993, 995 (9th Cir. 1985)).  The ALJ is responsible for

determining credibility, resolving conflicts in medical

testimony, and for resolving ambiguities.  "Where the evidence is

susceptible to more than one rational interpretation, one of

which supports the ALJ's decision, the ALJ's conclusion must be

upheld." <u>Thomas</u>, 278 F.3d at 954 (citation omitted).

### III. <u>*BURDEN OF PROOF*</u>

A claimant is disabled for purposes of the Social Security Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." <u>Schneider v. Commr. of Soc. Sec. Admin.</u>, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. <u>Corrao v. Shalala</u>, 20 F.3d 943, 946 (9th Cir. 1994) (citing 42 U.S.C. § 1382C(a)(3)).

1.  The claimant must first show that he or she is not currently engaged in substantial gainful activity. <u>Id.</u>

2.  If not so engaged, the claimant must next show that he or she has a severe impairment. <u>Id.</u>

3.  The claimant is conclusively presumed disabled if his or her impairments are equivalent to one on the list of impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.

4.  If the claimant does not have a listed impairment, then

-4-

the claimant must establish a prima facie case of disability by showing an inability to engage in past work because of the medical impairments. <u>Corrao</u>, 20 F.3d at 946.

5.   Upon such a showing, the burden then shifts to the Commissioner to prove that plaintiff can engage in other types of substantial gainful work existing in the national economy given the claimant's age, education, work experience and residual functional capacity. <u>Jones</u>, 760 F.2d at 995.

If the Commissioner finds that a claimant is disabled or not disabled at any point in this process, the review process is terminated. <u>Corrao</u>, 20 F.3d at 946.

## IV.   *<u>DISCUSSION</u>*

In his written decision, the ALJ followed the five-step sequential evaluation process in considering Lakel's claims. From a review of the evidence of record, and the testimony presented at the hearing, the ALJ first found that Lakel had not engaged in substantial gainful activity since her alleged onset date of November 24, 2003. *Tr. at 16; 22 (Finding No. 8)*.

Second, the ALJ found that Lakel has medically determinable physical impairments that could affect her ability to work. The physical impairments include multi-level degenerative changes of the cervical spine with spondylitic radiculopathy, chronic pain in her neck, lower back, and bilateral upper extremities, and chronic myofascial pain syndrome. *Tr. at 18; 22 (Finding No. 9)*.

The ALJ also found that Lakel has medically determinable psychological impairments that could affect her ability to work.

-5-

Such impairments include a major depressive disorder, an anxiety disorder (not otherwise specified), a narcotic pain medication addiction, and a history of alcohol abuse, reportedly in remission since December 2003.  *Tr. at 18, 22 (Finding No. 9)*.

Third, the ALJ found that Lakel's impairments do not meet or medically equal any impairment in the Listing of Impairments. *Tr. at 18, 20, 22 (Finding No. 11)*.

Fourth, the ALJ found that Lakel has the residual functional capacity ("RFC"):

> to perform light and sedentary work allowing her to
> alternate positions at approximately 30 minute
> intervals as necessary to relieve pain or discomfort;
> occasional lifting up to 20 pounds and frequent lifting
> up to 10 pounds; occasional balancing, stooping,
> kneeling, crouching, and crawling; climbing of ramps
> and stairs, but no climbing of ladders; occasional
> gross and fine motor manipulations, but no repetitive
> or routine fine motor activities; no concentrated
> exposure to vibrations, hazards or unprotected heights;
> and moderate limitations in concentration, persistence
> and pace.

*Tr. at 21; 23 (Finding No. 13)*.

Because of this RFC, the ALJ found that Lakel could still perform her past relevant work as a real estate agent/broker. *Tr. at 21; 23 (Finding No. 14)*.

Although the ALJ found that Lakel could perform her past relevant work as a real estate broker, he proceeded to the fifth step of the sequential evaluation process.  At step five, he found that Lakel also could perform a significant number of other jobs in the national economy, including work as a sales clerk,

-6-

desk clerk, and customer service clerk. *Tr. at 21; 23 (Finding No. 19)*.

In seeking reversal of the Commissioner's decision, Lakel argues that the ALJ's conclusion is not supported by substantial evidence. *Plaintiff's Brief in Support of Motion for Summary Judgment* ("*Lakel's Opening Br.*") (Court's Doc. No. 12) *at 10-13*. First, Lakel argues that the ALJ erred in failing to give controlling weight to the opinions of John Moseley, M.D., a neurosurgeon and Lakel's treating phyician, and Alan J. Baer, Ed.D., an examining psychologist. *Id. at 13-16; 18*. Second, Lakel argues that the ALJ erred in failing to consider a report submitted by Lakel's son, Brian Chilcote. *Id. at 19*. Third, Lakel argues that the ALJ erred when he found her subjective complaints not fully credible. *Id. at 16-17; 19*.

In response, the Commissioner first argues that the ALJ properly considered the opinion evidence of record. *Brief in Support of Motion for Summary Judgment* ("*Deft.'s Brief*") (Court's Doc. No. 17) *at 3-7*. Second, the Commissioner argues that the ALJ did not err in his consideration of Lakel's subjective complaints. *Id. at 8-9*. Third, the Commissioner argues that the ALJ did not err with respect to his consideration of Brian Chilcote's statement. *Id. at 9*.

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the ALJ's

decision is free of legal error.  Having reviewed the record, the
Court concludes that the ALJ erred in rejecting Dr. Moseley's
opinion.  Accordingly, the Court reverses the Commissioner's
decision denying Lakel benefits, and remands the matter to the
Commissioner for an award of benefits.  Because the Court finds
this issue dispositive, it does not address Lakel's other
allegations of error.

As noted, Lakel argues that the ALJ failed to set forth
specific and legitimate reasons for not giving Dr. Moseley's
opinion great weight.  The Court agrees.

"As a general rule, more weight should be given to the
opinion of a treating source than to the opinion of doctors who
do not treat the claimant.  At least where the treating doctor's
opinion is not contradicted by another doctor, it may be rejected
only for 'clear and convincing' reasons. [The Ninth Circuit Court
of Appeals has] also held that 'clear and convincing' reasons are
required to reject the treating doctor's ultimate conclusions.
Even if the treating doctor's opinion is contradicted by another
doctor, the Commissioner may not reject this opinion without
providing 'specific and legitimate reasons' supported by
substantial evidence in the record for so doing."  Lester v.
Chater, 81 F.3d 821, 830 (9th Cir. 1996) (citations omitted).

In the case at hand, the Commissioner argues that the ALJ's
conclusion with respect to Lakel's claim is "supported by the

opinions of Drs. Mitgang and Schofield, who in February and June 2004, respectively, found that [Lakel] could perform a reduced range of light work." *Deft.'s Brief at 5* (citing *Tr. at 124-30*). Because Dr. Moseley's opinion was contradicted by these other doctors, the ALJ had to provide "'specific and legitimate reasons' supported by substantial evidence in the record" for rejecting Dr. Moseley's opinion. <u>Lester</u>, 81 F.3d at 830. For the reasons that follow, the Court concludes that he did not.

The ALJ noted that Dr. Moseley has treated Lakel since 1999. *Tr. at 16.* He noted that, on May 25, 1999, Dr. Moseley diagnosed cervical spondylitic radiculopathy and early possible left thoracic outlet syndrome, and that Dr. Moseley recommended surgery to accomplish a posterior decompression and foraminotomy. *Id.* (referring to *Tr. at 113-14*). The ALJ briefly summarizes some of Lakel's other medical treatment, including that by Blackshear M. Bryan, III, M.D., who treated Lakel for continuing trapezial and right arm pain and numbness, and low back pain radiating into the buttocks. The ALJ noted that Dr. Bryan determined on May 30, 2003, that Lakel was at maximum medical improvement and was "functioning fully" with no work restrictions with respect to her work-related injury of chronic lumbar strain with myofascial pain. *Id.* (referring to *Tr. at 209-10*).

The ALJ next noted that "Dr. Moseley has continued to assert that the claimant is totally disabled and unemployable due to her

-9-

medical impairments and [is] in need of surgery." *Tr. at 17.*  He
noted that "[o]n March 11, 2005, Dr. Moseley wrote a letter to
the claimant's attorney indicating again, that in his opinion,
the claimant is totally medically disabled from employment and in
need of surgery, and he has encouraged her to try and get Social
Security Disability so that she could get access to care,
hopefully through Medicare." *Id.*

The ALJ then set forth his reasons for rejecting Dr.
Moseley's opinion.  First, although he acknowledged that a
treating physician's opinion is generally entitled to special
weight, the ALJ also noted that Dr. Moseley's opinion that Lakel
is disabled under the Act is an administrative finding on an
issue reserved to the Commissioner.  *Id.*

Second, the ALJ noted that Dr. Moseley's assessment of
Lakel's ability to work appeared to be based on Lakel's
subjective complaints and his desire to help her financially to
obtain surgery.  In reaching this conclusion, the ALJ noted that
Dr. Moseley's opinion did not appear to be based on objective
medical evidence.  *Id.*

Third, the ALJ noted that Dr. Moseley's characterization of
Lakel's MRI scan as "very abnormal" and his statement that the
MRI showed "a number of areas of marked nerve compression" were
inconsistent with another physician's reading of the MRI.  The
ALJ noted that David A. Ex, M.D., a radiologist, interpreted the

MRI as showing mild to moderate abnormalities with no spinal cord deformity or significant central canal narrowing. *Id.*

Fourth, the ALJ noted that other treating sources have released Lakel to return to work, and that even Dr. Moseley released her to return to light duty work on October 17, 2003, only shortly before her alleged onset date. *Id*.

Finally, the ALJ noted inconsistencies between objective medical findings and Dr. Moseley's statements that Lakel "can no longer do even minimal work-type activities" because of numbness and weakness in her arms and hands that prevent her from even cooking for herself.  The ALJ noted that treatment records indicate that Lakel has normal tone in her upper and lower extremities and that she has normal or nearly normal strength. *Id*.

Having reviewed the record, the Court concludes that the ALJ's stated reasons for rejecting Dr. Moseley's opinion are not specific and legitimate.  Thus, the Court concludes that the ALJ erred.

First, the Court disagrees with the ALJ's conclusions that Dr. Moseley based his opinion on Lakel's subjective complaints and not on objective medical evidence.  The record contains several notes and letters describing Dr. Moseley's treatment of Lakel beginning in 1999.  His treatment notes and letters include his physical examinations of Lakel (including strength, sensory,

and reflex testing), results of an MRI of Lakel's cervical spine, and other testing. *Tr. at 113-14; 147-52; 154-59; 172-75; 279-80.* His notes clearly indicate that he has been recommending since 1999 that Lakel needs surgery on her cervical vertebrae. All of these records contain objective medical evidence upon which Dr. Moseley properly based his opinion. Thus, the ALJ's conclusion that Dr. Moseley based his opinion on Lakel's subjective complaints and not on objective medical evidence is contrary to the evidence of record.

Second, the Court disagrees with the ALJ's finding that Dr. Moseley's characterization of Lakel's MRI scan as "very abnormal" and statement that the MRI showed "marked nerve compression" were inconsistent with Dr. Ex's interpretation. A careful reading of Dr. Ex's MRI report indicates that four levels of Lakel's cervical spine had foraminal narrowing, disk protrusion, osseous ridging, and/or central canal narrowing. *Tr. at 155-56.* The ALJ's finding that Dr. Moseley's characterization of such an MRI as "very abnormal" was inconsistent with Dr. Ex's interpretation is simply incorrect. Dr. Ex's report does not describe a "normal" MRI scan.

Also, it is undisputed that Dr. Moseley is a neurosurgeon who has followed Lakel's cervical spine condition since 1999. His observation that her MRI indicates "a number of areas of marked nerve compression" is not contradicted by Dr. Ex's

interpretation of the MRI.  Although Dr. Ex describes "mild" and
"moderate" foraminal narrowing, posterior osseous ridging, disk
protrusion, and central canal narrowing, those descriptions are
not necessarily inconsistent with a finding of "marked nerve
compression" by the treating neurosurgeon.  The ALJ erred in
relying on this perceived inconsistency in rejecting Dr.
Moseley's opinion.

Third, the Court is not persuaded by the ALJ's rejection of
Dr. Moseley's opinion on the basis that he, and other treating
sources, previously released Lakel to return to work.  Other
treating sources who cleared Lakel to return to work did so based
on physical limitations other than those stemming from her
cervical spine abnormalities.

For example, Dr. Bryan, who reported that Lakel had reached
maximum medical improvement and did not have any work
restrictions, did so on May 30, 2003, which date is before
Lakel's alleged onset date.  *Tr. at 209-10*.  Also, Dr. Bryan
referred only to Lakel's chronic lumbar strain with myofascial
pain in his report and expressly noted that Lakel "does not have
any work restrictions **as regards this injury**."  *Id*. (emphasis
added).  A reasonable inference to be drawn from this report is
that it did not relate to the period after Lakel's alleged onset
date, and did not relate to Lakel's limitations arising from her
cervical spine problems.

-13-

Also, with respect to the report by Michael Schabacker, M.D., dated June 4, 2004, the report pertains to an impairment rating that Dr. Schabacker performed for workers compensation. The report deals only with a right wrist injury Lakel sustained at work on May 9, 2001. *Tr. at 160-64*. The report does not deal with the cervical spine problems to which Dr. Moseley has directed his opinions.

With respect to Dr. Moseley's note releasing Lakel to work, the note is dated October 17, 2003. *Tr. at 153*. Thus, it predates Lakel's alleged onset of disability date. Moreover, this note of release to work is followed consistently and repeatedly by notes and letters from Dr. Moseley that Lakel is: (1) "totally incapacitated" (*Tr. at 149-50*); (2) in need of surgery (*Tr. at 173-74*); (3) "unable to reliably even cook for herself let alone try and be employed"; and (4) "totally medically disabled from employment" (*Tr. at 279-80*). Thus, the ALJ erred in relying on the October 17, 2003, note in rejecting Dr. Moseley's opinion.

Fourth, with respect to the ALJ's finding of inconsistency between Dr. Moseley's statement that Lakel can no longer do even minimal work-type activities because of numbness and weakness in her arms and hands and other objective medical findings, the Court disagrees. Again, Dr. Moseley, a neurosurgeon, has treated and evaluated Lakel since 1999. As already noted, Dr.

-14-

Schabacker, on whose report the ALJ relied for this finding, evaluated Lakel in June of 2004 with respect to determining a workers compensation claim for an injury to Lakel's wrist.  *Tr. at 160-64*.  He did not provide Lakel with long-term care, nor did he provide care with respect to her cervical spine condition.  Also, when Dr. Schabacker examined Lakel in January 2005, he noted reduced range of motion of her cervical spine, diagnosed chronic pain at "multiple sites," and prescribed pain medications.  *Tr. at 194-95*.  His observations and treatments of Lakel are not inconsistent with those of Dr. Moseley.

Finally, the ALJ correctly concludes that Dr. Moseley's opinion that Lakel is "disabled" is an opinion on an issue reserved solely to the Commissioner.  That conclusion alone, however, is not a sufficient basis for rejecting Dr. Moseley's opinion, particularly in light of his treatment history with Lakel and his assessment of her functional limitations stemming from her cervical spine condition.  The Court notes that the factual detail that Dr. Moseley included in his reports and letters, together with the force of tone that he employed in rendering his opinions, emphasize his status as a treating physician who "is employed to cure and [who] has a greater opportunity to know and observe the patient as an individual."  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)(explaining rationale for giving greater weight to a treating physician's

opinion).  To reject his overall opinion as to Lakel's physical status solely on the basis that he opined on an issue reserved to the Commissioner would be to ignore improperly his other opinions rendered as a treating physician.

The Court is mindful that some evidence of record in this case more readily supports the ALJ's decision.  However, neither the ALJ nor the Court is permitted to view that evidence in a vacuum without consideration of Dr. Moseley's opinion.  None of the other physicians mentioned in the record treated Lakel for problems arising from her cervical spine with either the frequency or for the duration of time that Dr. Moseley did.  For the reasons already stated *supra*, the ALJ was not permitted to relegate Dr. Moseley's opinion to a position of less importance than those of the other physicians and treating sources, particularly in light of his longstanding familiarity with Lakel's condition.

In summary, upon its own review of the record, the Court finds that the ALJ does not provide legitimate reasons for his rejection of Dr. Moseley's opinion.  Thus, the ALJ erred. Because the record is adequate to support Lakel's claim when Dr. Moseley's opinion is properly credited, the Court need not address her other allegations of error.

Because the Court reverses the Commissioner's decision denying benefits, the Court next must decide whether to remand

-16-

for an award of benefits.  In considering this question, the Court has reviewed the Ninth Circuit's decision in <u>Moisa v. Barnhart</u>, 367 F.3d 882 (9th Cir. 2004).  In <u>Moisa</u>, the court determined remand for payment of benefits was appropriate because, *inter alia*, no outstanding issues remained to be resolved before a determination of disability could be made.  <u>Id</u>. The same is true here.  If the opinion of Dr. Moseley is properly credited, it compels the conclusion that Lakel is disabled under the Act.  Remand for further proceedings would add nothing.

**V.    <u>CONCLUSION</u>**

Based on the foregoing,

**IT IS ORDERED** that Lakel's motion for summary judgment (Court's Doc. No. 12) is GRANTED, the Commissioner's motion for summary judgment (Court's Doc. No. 16) is DENIED and the matter is REMANDED to the Commissioner for an award of benefits.

The Clerk of Court shall enter Judgment accordingly.

DATED this 13th day of March, 2007.


**/S/** Carolyn S. Ostby
Carolyn S. Ostby
United States Magistrate Judge